8/30/2024 5:24 PM
24CV42085

IN THE CIRCUIT COURT OF THE STATE OF OREGON

FOR THE COUNTY OF LANE

RYAN ESGATE,
for himself and
on behalf of all others similarly situated,

Plaintiff,

v.

HOME DEPOT U.S.A., INC.; and
GLOBAL CUSTOM COMMERCE L.P.,

Defendants.

Case No. ____________________

**CLASS ACTION COMPLAINT FOR VIOLATION OF THE UNLAWFUL TRADE PRACTICES ACT, ORS 646.605 *et seq.***

CLAIMS NOT SUBJECT TO MANDATORY ARBITRATION

DEMAND FOR JURY TRIAL

Filing Fee Authority: ORS 21.135(2)(a)



**HATTIS & LUKACS**
11711 SE 8th Street, Suite 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

Plaintiff Ryan Esgate, individually and on behalf of all others similarly situated, alleges as follows, on personal knowledge and investigation of his counsel, against Defendants Home Depot U.S.A., Inc., and Global Custom Commerce L.P. (collectively, "Home Depot" or "Defendants"):

## INTRODUCTION AND SUMMARY

1.

This is a class action brought under Oregon law on behalf of a class of Oregon consumers who purchased one or more products advertised at a discount on one of the Home Depot websites, Blinds.com, JustBlinds.com, and AmericanBlinds.com.

2.

Home Depot makes blinds, shades, and other window covering products, which it markets and sells directly to consumers online through its websites Blinds.com, JustBlinds.com, and AmericanBlinds.com (the "Home Depot websites").

3.

For years, Home Depot has engaged in a massive and consistent false discount advertising scheme across the Home Depot websites. Specifically, Home Depot advertises perpetual discounts on all of its products. These discounts always offer "XX% off" or "up to XX% off." These discounts are taken from Home Depot's advertised list prices for its products. Home Depot represents these list prices to be the regular and normal prices of the products, and the list prices function as "reference prices"[1] from which the advertised discounts are calculated.

---

[1] Oregon law defines "reference price" as "any price, whether stated in dollars, in terms of a percentage or fraction, or by any other method, to which a person compares the currently represented offering price of its own goods." OAR 137-020-0010(5)(e).

"Examples of 'reference prices' include manufacturer's suggested list or suggested retail prices; a competitor's offering price for the same or similar goods; a price at which the person formerly offered for sale or sold the same or similar goods; and an unspecified price at which the person formerly offered for sale or sold the same or similar goods suggested by the use of terms such as 'on sale,' 'reduced to,' '___% off,' or the like." OAR 137-020-0010(5)(e).



HATTIS & LUKACS
11711 SE 8th Street, Suite 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

4.

Home Depot's advertised discounts and reference prices are false because Home Depot advertises perpetual discounts off everything on its websites, and thus rarely if ever offers its products at their advertised list price.

5.

Home Depot's deceptive pricing scheme is intended to trick consumers into believing that its products are worth, and have a market value equal to, the inflated list price, and that the lower advertised sale price represents a special bargain. Home Depot perpetrates this illegal scheme in order to induce consumers to purchase its products and to charge more for its products than it otherwise could have charged.

6.

Home Depot's false discount advertising harms consumers like Plaintiff by causing them to pay more than they otherwise would have paid and to buy products that they otherwise would not have bought. *See Clark v. Eddie Bauer LLC*, 371 Or. 177, 198–99, 532 P.3d 880, 893 (2023) ("[W]hen a person acts in response to the deception by spending money that the person would not otherwise have spent, the person has been injured to the extent of the purchase price as a result of that deception."). Customers do not enjoy the actual discounts Home Depot promises them, and the items are not in fact worth the amount that Home Depot represents to them. Home Depot's deceptive pricing scheme also artificially increases the demand for its products and causes all customers, including Plaintiff and Class members, to pay premiums to Home Depot.

7.

Home Depot's false discount advertising violates the Oregon Unlawful Trade Practices Act (UTPA), ORS 646.605 *et seq*., in numerous ways, as detailed in this Complaint.

8.

Plaintiff Ryan Esgate brings this lawsuit individually and on behalf of a class of Oregon consumers who purchased one or more products advertised with a discount on the Home Depot websites. Plaintiff does not seek damages at this time, only equitable relief, including injunctive relief to enjoin Home Depot from engaging in the unlawful conduct alleged herein. ORCP 32(J).



HATTIS & LUKACS
11711 SE 8th Street, Suite 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

Plaintiff intends to amend the complaint to request damages for himself and on behalf of the other class members if Home Depot does not comply with ORCP 32(I), which requires Home Depot to: provide the identity and contact information of each putative class member; notify each putative class member that upon request Home Depot will make the appropriate compensation, correction, or remedy of the alleged wrong; provide such compensation, correction, or remedy to each putative class member; and cease from engaging in the methods, acts, or practices alleged to be violative of the rights of the putative class members.

**THE PARTIES**

9.

Plaintiff Ryan Esgate is, and at all relevant times has been, a citizen and resident of the city of Eugene, in Lane County, Oregon.

10.

Defendant Home Depot U.S.A., Inc. ("Home Depot") is a Delaware corporation with its principal place of business at 2455 Paces Ferry Road, Atlanta, Georgia 30339. Home Depot owns and operates the brands and websites Blinds.com, JustBlinds.com, and AmericanBlinds.com.

11.

Global Custom Commerce L.P. ("GCC") is a limited partnership that is owned and controlled by Home Depot with a place of business of 10255 Richmond Avenue, Suite 300, Houston, Texas 77042. GCC is the largest pure play ecommerce retailer in the configurable home décor space, powering the Home Depot and Home Depot's brands Blinds.com, JustBlinds, and American Blinds.  Home Depot dominates and controls GCC and uses GCC as an instrumentality of the false discount advertising scheme alleged herein. (Unless specifically pleaded otherwise, all references herein to "Home Depot" include GCC.)

**JURISDICTION AND VENUE**

12.

**Subject Matter Jurisdiction.** This Court has subject matter jurisdiction over this action pursuant to ORS 14.030.



HATTIS & LUKACS
11711 SE 8th Street, Suite 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

13.

**Personal Jurisdiction.** This Court has personal jurisdiction over Defendant because, without limitation: (1) Defendant is authorized to do business and regularly conducts business in Oregon; (2) the claims alleged herein took place in Oregon; and/or (3) Defendant has committed tortious acts within Oregon (as alleged, without limitation, throughout this Complaint). Defendant has sufficient minimum contacts with Oregon to render the exercise of jurisdiction by this Court permissible.

14.

**Venue.** Venue is proper in Lane County because, without limitation, Plaintiff is an Oregon citizen who resides in this county, and Plaintiff visited Home Depot's website and purchased Home Depot's products while he was at his home in Eugene, Oregon.

## FACTUAL ALLEGATIONS OF HOME DEPOT'S UNLAWFUL PRACTICES

15.

Home Depot makes blinds, shades, and other window covering products, which it markets and sells directly to consumers online through the websites of its brands Blinds.com, JustBlinds.com, and AmericanBlinds.com.

16.

For years, Home Depot has engaged in a massive false discount advertising scheme on its blinds websites, whereby Home Depot advertises perpetual discounts on nearly every product. These discounts are typically "sitewide" and always offer "XX% off" or "up to XX% off." These discounts are taken from Home Depot's advertised list prices for its products, which are presented as Home Depot's own regular selling prices for the products. However, unbeknownst to its customers, Home Depot's discounts are never-ending, and its products are never offered at the supposed regular price. Home Depot perpetrates this illegal scheme in order to induce consumers to purchase its products and to increase the amount it can charge for its products.

17.

Home Depot advertises these discounts extensively on its websites, including in large banner images on its homepages; on group product pages; on the individual product pages; and



HATTIS & LUKACS
11711 SE 8th Street, Suite 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

on the checkout pages. Home Depot also represents that these discounts will "End[] Soon" or will end on a certain date, even though the discounts run in perpetuity. Below are example screenshots from the three websites of these sitewide perpetual discounts:

**Blinds.com Homepage June 6, 2021**




**Blinds.com Homepage March 3, 2022**






HATTIS & LUKACS
11711 SE 8th Street, Suite 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

**Blinds.com Homepage August 26, 2022**




**Blinds.com Homepage January 6, 2023**






HATTIS & LUKACS
11711 SE 8th Street, Suite 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

**Blinds.com Homepage September 7, 2023**




**Blinds.com Homepage October 17, 2023**






HATTIS & LUKACS
11711 SE 8th Street, Suite 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

**Blinds.com Webpage February 16, 2023**






HATTIS & LUKACS
11711 SE 8th Street, Suite 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

**Blinds.com Product Page January 29, 2023**




**Blinds.com Shopping Cart June 11, 2024**






HATTIS & LUKACS
11711 SE 8th Street, Suite 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

**JustBlinds.com Homepage July 31, 2021**




**JustBlinds.com Homepage March 7, 2022**






HATTIS & LUKACS
11711 SE 8th Street, Suite 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

**JustBlinds.com Homepage June 7, 2022**




**JustBlinds.com Homepage February 6, 2023**






**HATTIS & LUKACS**
11711 SE 8th Street, Suite 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

**JustBlinds.com Homepage April 1, 2023**




**JustBlinds.com Homepage July 12, 2023**






**HATTIS & LUKACS**
11711 SE 8th Street, Suite 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

**JustBlinds.com List Page September 2, 2023**




**JustBlinds.com Product Page July 22, 2023**






HATTIS & LUKACS
11711 SE 8th Street, Suite 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

**AmericanBlinds.com Homepage February 5, 2021**




**AmericanBlinds.com Homepage February 11, 2022**






HATTIS & LUKACS
11711 SE 8th Street, Suite 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

**AmericanBlinds.com Homepage April 1, 2022**




**AmericanBlinds.com Homepage November 6, 2022**






HATTIS & LUKACS
11711 SE 8th Street, Suite 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

**AmericanBlinds.com Homepage January 30, 2023**




**AmericanBlinds.com Homepage August 15, 2023**






HATTIS & LUKACS
11711 SE 8th Street, Suite 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

**AmericanBlinds.com Webpage June 11, 2024**



AMERICAN BLINDS

**Legacy Blackout Cellular Shades**

★★★★★ 158 REVIEWS

Insulates and blocks sunlight. Broad palette of fabric color choices.

~~$101.99~~ SAVE 45%

**$56.09**



AMERICAN BLINDS

**Light Filtering Cellular Shades**

★★★★★ 326 REVIEWS

Experience the gentle diffusion of sunlight, complemented by insulation against external temperatures. Select from an extensive range of colors and prints that effortlessly harmonize with your home's unique style.

~~$86.99~~ SAVE 45%

**$47.84**



AMERICAN BLINDS

**Prestige Blackout Cellular Shades**

★★★★½ 204 REVIEWS

Superior insulation properties. Available in a variety of colors and lift options to fit all needs.

~~$157.99~~ SAVE 45%

**$86.89**



HATTIS & LUKACS
11711 SE 8th Street, Suite 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

**AmericanBlinds.com Product Page June 11, 2024**




18.

Home Depot represents that these discounts will only be available for a limited time, but in reality, they continue indefinitely. For example, as depicted in the screenshots below, Home Depot represents that its “sitewide” event sales expire on a particular date (e.g., “ENDS 2/14”). To reasonable consumers, this means that after that specified date, Home Depot’s products will no longer be on sale after that specified date and will be offered for sale at their advertised list price. But immediately after each purportedly time-limited sale ends, Home Depot advertises another similar or identical discount with a new expiration date.

19.

For example, on January 19, 2021, Home Depot advertised a purportedly time-limited “sitewide” sale that “ENDS JANUARY 20, 2021” on JustBlinds.com. (Red box added.)



HATTIS & LUKACS
11711 SE 8th Street, Suite 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

**JustBlinds.com Homepage January 19, 2021**

(Sitewide sale advertised as ending January 20, 2021)




20.

Yet, on January 21, 2021, the date that the time-limited sitewide sale was supposed to have ended, Home Depot advertised a new, similar sitewide sale with a new expiration date, January 27, 2021. (Red box added.)

**JustBlinds.com Homepage January 21, 2021**

(Sitewide sale advertised as ending January 27, 2021)






HATTIS & LUKACS
11711 SE 8th Street, Suite 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

21.

For example, on April 19, 2022, Home Depot advertised a purportedly time-limited "sitewide" sale that "Ends April 20, 2022" on AmericanBlinds.com. (Red box added.)

**AmericanBlinds.com Homepage April 19, 2022**

(Sitewide sale advertised as ending April 20, 2022)




22.

Yet, on April 21, 2022, the date that the time-limited sale was supposed to have ended, Home Depot advertised a new, similar "sitewide" sale with a new expiration date, April 27, 2022. (Red box added.)

**AmericanBlinds.com Homepage April 21, 2022**

(Sitewide sale advertised as ending April 27, 2022)



23.

For example, on February 14, 2023, Home Depot advertised a purportedly time-limited "sitewide" sale that "ENDS 2/14" on Blinds.com. (Red box added.)

**Blinds.com Homepage February 14, 2023**

(Sitewide sale advertised as ending February 14, 2023)




24.

Yet, on February 15, 2023, the date that the time-limited sale was supposed to have ended, Home Depot advertised a new, similar sale with a new expiration date of "ENDS 2/22."

**Blinds.com Homepage February 15, 2023**

(Sitewide sale advertised as ending February 22, 2023)






HATTIS & LUKACS
11711 SE 8th Street, Suite 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

25.

The above examples are not isolated occurrences of back-to-back sitewide sales events; rather they are representative of sitewide "sales" that continue all year long without a break. Every single product, every single day, is advertised as being discounted at a special "sale" price and as representing a special bargain that day. The advertised discounts are false; when everything is always on "sale," then nothing is actually on "sale."

26.

For example, below is a series of screenshots of the Blinds.com homepage showing perpetual sitewide discounts off of everything for two months straight, from January 21, 2022, to March 15, 2022. When one "sale" expires it is either extended or another similar sale immediately takes its place. (Red boxes added.)

**Blinds.com Homepage January 21, 2022**

(Sitewide sale advertised as ending January 25, 2022)






HATTIS & LUKACS
11711 SE 8th Street, Suite 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

## Blinds.com Homepage February 2, 2022

(Sitewide sale advertised as ending February 8, 2022)




## Blinds.com Homepage February 9, 2022

(Sitewide sale “deadline” extended to February 15, 2022)




## Blinds.com Homepage February 16, 2022

(Sitewide sale advertised as ending February 22, 2022)






HATTIS & LUKACS
11711 SE 8th Street, Suite 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

**Blinds.com Homepage February 23, 2022**

(Sitewide sale advertised as ending March 1, 2022)




**Blinds.com Homepage March 2, 2022**

(Sitewide sale "deadline" extended to March 8, 2022)






HATTIS & LUKACS
11711 SE 8th Street, Suite 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

**Blinds.com Homepage March 9, 2022**

(Sitewide sale advertised as ending March 15, 2022)




27.

Plaintiff's allegations concerning Home Depot's false discount advertising are based in part on Plaintiff's counsel's investigation of the Home Depot websites (Blinds.com, JustBlinds.com, and AmericanBlinds.com) using the Internet Archive's Wayback Machine (available at www.archive.org).[2] Plaintiff's allegations are also based on daily screenshots and pricing data compiled from Plaintiff's counsel's own scraping of the Home Depot websites with a proprietary software program.

Counsel's investigation confirms that Home Depot's perpetual sales have persisted on the Home Depot websites continuously since at least August 2020 (and likely earlier). Plaintiff's counsel examined several hundred randomly selected screenshots of the Home Depot websites from the Internet Archive's Wayback Machine, going back to 2020. Every one of the randomly selected screenshots from the Home Depot websites displayed a sitewide and purportedly time-limited discount and/or individual product discounts. Likewise, counsel's analysis of the screenshots and pricing data compiled with counsel's proprietary software program shows that Home Depot's perpetual "sales" and false discounts continue to this day.

---

[2] The Internet Archive is an internet library that archives webpages. For more information: https://archive.org/about/.



HATTIS & LUKACS
11711 SE 8th Street, Suite 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

**HOME DEPOT'S FALSE DISCOUNT ADVERTISING SCHEME HARMS CONSUMERS AND VIOLATES OREGON LAW**

28.

Decades of academic research has established that the use of reference prices and discount advertising like that utilized by Home Depot materially impacts consumers' behavior. A reference price affects a consumer's perception of the value of the transaction, the consumer's willingness to make the purchase, and the amount of money the consumer is willing to pay for the product.[3]

29.

When a reference price and corresponding discount is bona fide and truthful, it may help consumers in making informed purchasing decisions. In contrast, consumers are harmed when retailers, such as Home Depot, advertise their products with inflated false reference prices. The false reference prices deceive consumers, deprive consumers of a fair opportunity to accurately evaluate the offer, and result in purchasing decisions based on false pretenses.

---

[3] *See*, *e.g.*, Richard Staelin, Joel E. Urbany & Donald Ngwe, *Competition and the Regulation of Fictitious Pricing*, 87 J. of Mktg. 826 (2023); Mark Armstrong & Yongmin Chen, *Discount Pricing*, 58 Econ. Inquiry 1614 (2020); Rajesh Chandrashekaran & Dhruv Grewal, *Assimilation of Advertised Reference Prices: The Moderating Role of Involvement*, 79 J. Retailing 53 (2003); Pilsik Choi & Keith S. Coulter, *It's Not All Relative: The Effects of Mental and Physical Positioning of Comparative Prices on Absolute Versus Relative Discount Assessment*, 88 J. Retailing 512 (2012); Larry D. Compeau & Dhruv Grewal, *Comparative Price Advertising: An Integrative Review,* 17 J. Pub. Pol'y & Mktg. 257 (1998); Larry D. Compeau, Dhruv Grewal & Rajesh Chandrashekaran, *Comparative Price Advertising: Believe It or Not*, 36 J. Consumer Aff. 284 (2002); David Friedman, *Reconsidering Fictitious Pricing*, 100 Minn. L. Rev. 921 (2016); Dhruv Grewal & Larry D. Compeau, *Consumer Responses to Price and its Contextual Information Cues: A Synthesis of Past Research, a Conceptual Framework, and Avenues for Further Research*, in 3 Rev. of Mktg. Res. 109 (Naresh K. Malhotra ed., 2007); Daniel J. Howard & Roger A. Kerin, *Broadening the Scope of Reference Price Advertising Research: A Field Study of Consumer Shopping Involvement*, 70 J. Mktg. 185 (2006); Aradhna Krishna, Richard Briesch, Donald R. Lehmann & Hong Yuan, *A Meta-Analysis of the Impact of Price Presentation on Perceived Savings*, 78 J. Retailing 101 (2002); Balaji C. Krishnan, Sujay Dutta & Subhash Jha, *Effectiveness of Exaggerated Advertised Reference Prices: The Role of Decision Time Pressure*, 89 J. Retailing 105 (2013); Gorkan Ahmetoglu, Adrian Furnham, & Patrick Fagan, *Pricing Practices: A Critical Review of their Effects on Consumer Perceptions and Behavior*, 21 J. of Retailing & Consumer Servs. 696 (2014); Bruce L. Alford & Abhijit Biswas, *The Effects of Discount Level, Price Consciousness and Sale Proneness on Consumers' Price Perception and Behavioral Intention*, 55 J. Bus. Res. 775 (2002); and Tridib Mazumdar, S. P. Raj & Indrahit Sinha, *Reference Price Research: Review and Propositions*, 69 J. Mktg. 84 (2005).



HATTIS & LUKACS
11711 SE 8th Street, Suite 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

30.

As a direct and proximate result of Home Depot's false reference prices and false discounts, Plaintiff and Class members were harmed and suffered ascertainable losses of money or property.

31.

First, Plaintiff and Class members were harmed because they would not have purchased the items at the prices they paid had they known that the discounts were phony and that the items had not in fact been regularly offered at the higher listed price. *See Clark v. Eddie Bauer LLC*, 371 Or. 177, 198–99, 532 P.3d 880, 893 (2023) ("[W]hen a person acts in response to the deception by spending money that the person would not otherwise have spent, the person has been injured to the extent of the purchase price as a result of that deception."). Consumers that are presented with discounts are substantially more likely to make the purchase. "Nearly all consumers (94%) search for a deal or offer when shopping online;" "81% of [consumers] say finding a great offer or discount is on their mind throughout the entire purchase journey;" and "two-thirds of consumers have made a purchase they weren't originally planning to make solely based on finding a coupon or discount." RetailMeNot Survey: Deals and Promotional Offers Drive Incremental Purchases Online, Especially Among Millennial Buyers (prnewswire.com).

32.

Second, Plaintiff and Class members were harmed because they did not receive the benefits of their bargain. Plaintiff and class members did not enjoy the actual discounts Home Depot represented and promised to them. Plaintiff and Class members did not receive items that were worth the inflated amount that Home Depot represented to them; the items did not regularly sell for, and were not actually worth, the fictitious and invented list price advertised by Home Depot.

33.

Third, Plaintiff and Class members were harmed because they paid a price premium due to illegitimately inflated demand resulting from Home Depot's deceptive pricing scheme. Home Depot's false discount advertising scheme artificially increased consumer demand for Home



HATTIS & LUKACS
11711 SE 8th Street, Suite 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

Depot's products, which shifted the demand curve and allowed Home Depot to charge more for its products than it otherwise could have charged (i.e., a price premium) absent the misrepresentations. Home Depot's false advertising scheme enabled Home Depot to charge everyone more for all of its products by artificially stimulating demand based on false pretenses. *See*, *e.g.*, Richard Staelin, Joel E. Urbany & Donald Ngwe, *Competition and the Regulation of Fictitious Pricing*, 87 J. of Mktg. 826, 836 (2023) (observing that "numerous empirical studies on the effects of promotions" have shown that promotions cause an "outward shift" in the demand curve (i.e., a price premium), which can be "substantial").

34.

In addition to harming consumers, the practice of employing false reference prices and false discounts also negatively affects the integrity of competition in retail markets. A retailer's use of false reference prices constitutes an unfair method of competition and harms honest competitors that sell the same or similar products, or otherwise compete in the same market, using valid and accurate reference prices and true "sales." Businesses who play by the rules—and the investors in those businesses—are penalized if the unlawful advertising practices of their competitors go unchecked.

35.

Federal and state courts have articulated the abuses that flow from false discount advertising practices. For example, the Ninth Circuit explained: "Most consumers have, at some point, purchased merchandise that was marketed as being 'on sale' because the proffered discount seemed too good to pass up. Retailers, well aware of consumers' susceptibility to a bargain, therefore have an incentive to lie to their customers by falsely claiming that their products have previously sold at a far higher 'original' price in order to induce customers to purchase merchandise at a purportedly marked-down 'sale' price." *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1101 (9th Cir. 2013).

36.

Oregon law prohibits false discount practices such as those perpetrated by Home Depot. Oregon's Unlawful Trade Practices Act (UTPA) broadly prohibits: "Mak[ing] false or



HATTIS & LUKACS
11711 SE 8th Street, Suite 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

misleading representations of fact concerning the reasons for, existence of, or amounts of price reductions." ORS 646.608(1)(j).

37.

Additionally, the UTPA prohibits sellers from using misleading price comparisons to advertise their products. ORS 646.608(ee) (citing ORS 646.883 and ORS 646.885). Specifically, the UTPA prohibits a seller from advertising a price comparison unless "[t]he seller clearly and conspicuously identifies in the advertisement the origin of the price that the seller is comparing to the seller's current price." ORS 646.883(1); ORS 646.608(ee).

38.

The UTPA also prohibits price comparison advertising which uses terms such as "regular," "reduced," "sale," and "originally" where the reference price was not in fact the retailer's own former price for the product. ORS 646.885(1); ORS 646.608(ee).

39.

The UTPA also prohibits price comparison advertising which uses terms such as "discount," "____ percent discount," "$____ discount," "____ percent off," and "$____ off" where the reference price was not in fact the retailer's own former price for the product. ORS 646.885(2); ORS 646.608(ee).

40.

In order for a reference price to be a lawful former price, it must be a price at which the seller, in the regular course of its business, made good-faith sales of the same or similar product or offered in good faith to make sales of the same or similar product within the preceding 30 days or on a date which is identified in the advertisement. OAR 137-020-0010(6)(a).

41.

Compliance with ORS 646.608(1)(j) and OAR 137-020-0010 "is established based on facts provable by the seller." ORS 646.883(2).

42.

As alleged in detail above, Home Depot's advertised reference prices and discounts violate Oregon law because, based on the investigation of Plaintiff's counsel, Home Depot's



HATTIS & LUKACS
11711 SE 8th Street, Suite 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

advertised reference prices are inflated and fictitious, and Home Depot's advertised percentage-off and dollars-off discounts are false. Home Depot's reference prices and discounts are false because Home Depot advertises perpetual discounts off everything on its websites, and thus rarely, if ever, offers its products at their advertised list price.

43.

Also, as alleged in detail above, Home Depot uses misleading price comparisons. For example, Home Depot uses strikethrough list prices without clearly and conspicuously identifying in the advertisement the origin of the price that Home Depot is comparing to the current price. As shown in the images above, Home Depot uses strikethrough list prices without any disclosure about where the strikethrough price comes from. Absent any disclosure, Home Depot's strikethrough list prices are viewed under Oregon law and by reasonable consumers to refer to Home Depot's own former regular prices for those products. These strikethrough list prices are false because Home Depot in fact perpetually offers the products at lower "discounted" prices.

44.

Additionally, as alleged in detail above, Home Depot uses terms such as "sale," "discount," and "___% off" even though the products are not offered at a discount as compared to Home Depot's own former prices. And Home Depot makes no disclosure indicating that the price comparisons are to something other than to Home Depot's own former prices.

45.

The false reference price and false discount representations by Home Depot on its websites were material to the decisions of consumers to purchase each product. Because of the false reference price and false discount representations, consumers reasonably believed they would be receiving significant savings if they purchased these products, and consumers purchased these products on the basis of these representations in order to enjoy the purported discounts.



HATTIS & LUKACS
11711 SE 8th Street, Suite 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

46.

Home Depot's marketing plan is to deceive its customers into believing that its products are worth, and have a market value equal to, the inflated list price, and that the lower advertised sale price represents a special bargain.

47.

The false or misleading nature of Home Depot's reference prices and discounts was, at all relevant times, masked or concealed such that an ordinary consumer exercising reasonable care under all the circumstances would not have known or discovered their false or misleading nature.

48.

As a direct and proximate result of Home Depot's acts and omissions, all Oregon consumers who have purchased a product from one of the Home Depot websites that was advertised with a reference price or discount (which was false as a matter of course) have been harmed and have suffered ascertainable losses.

49.

Home Depot continues to advertise false reference prices and false discounts on its websites to this day. There is no reason to believe that Home Depot will voluntarily and permanently cease its unlawful practices. Moreover, in the unlikely event that Home Depot were to cease its unlawful practices, Home Depot can and is likely to re-commence these unlawful practices.

50.

In acting toward consumers and the general public in the manner alleged herein, Home Depot acted with and was guilty of malice, fraud, and oppression and acted in a manner with a strong and negative impact upon Plaintiff, the Class, and the public.

## PLAINTIFF'S FACTUAL ALLEGATIONS

51.

Plaintiff Ryan Esgate is, and at all relevant times has been, a citizen and resident of the city of Eugene, in Lane County, Oregon.



HATTIS & LUKACS
11711 SE 8th Street, Suite 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

52.

Mr. Esgate is a victim of Home Depot's false discount advertising scheme.

53.

As detailed above, Home Depot's false discounting practices have been ongoing since at least August 2020. During this time, Mr. Esgate has purchased products from Home Depot which were advertised with false reference prices and false discounts.

54.

On November 29, 2021, while in Eugene, Oregon, Mr. Esgate visited the Home Depot Blinds.com website to shop for some blinds and shades.

55.

While browsing the website, Mr. Esgate viewed pricing and discount representations similar to those described in detail above. For example, on the website's homepage, Home Depot represented that a time-limited site-wide sales event of "UP TO 45% OFF EVERYTHING + EXTRA 5% OFF EVERY ORDER" was running until "12/1" and applied to the types of blinds and shades that Mr. Esgate was interested in purchasing. Below is a screenshot of the Blinds.com homepage on November 28, 2021, showing the sales event that was running until 12/1, and was running when Mr. Esgate was shopping on the website and ultimately made his purchases on November 29, 2021.

**Blinds.com Homepage November 28, 2021**






HATTIS & LUKACS
11711 SE 8th Street, Suite 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

56.

Mr. Esgate was enticed to continue shopping and purchase products on the website based on the promised large discounts and special event, limited time savings that Home Depot was advertising.

57.

On the site's webpages, next to every single one of the products that he was interested in purchasing, Mr. Esgate saw a strikethrough reference price next to the phrase "SAVE 45%" in bold red font. Below that, Mr. Esgate saw a selling price and a "+Extra 5% off" in bold red font below that. Mr. Esgate also saw similar price and discount representations on the individual product pages.

58.

Based on Home Depot's representations, Mr. Esgate believed he needed to act fast and purchase the blinds and shades now to take advantage of the special sale before the products returned to their normal full prices in two days on December 1, 2021.

59.

Mr. Esgate then proceeded to choose and customize 16 different sets of shades and blinds. Mr. Esgate purchased ten (10) Levolor Light Filtering Cellular Shades, four (4) Levolor Blackout Cellular Shades, and two (2) Levolor 2 1/2 Inch Real Wood Blinds from the website.

60.

Mr. Esgate then proceeded through the online checkout process. During the checkout process, Home Depot continued to repeatedly represent that a time-limited site-wide sales event of "UP TO 45% OFF EVERYTHING + EXTRA 5% OFF EVERY ORDER" was running until "12/1" and applied to the products that Mr. Esgate purchased.

61.

In the online shopping cart and during the checkout process, Home Depot represented to Mr. Esgate that the regular selling price for all of the products combined was $6,858.61 and that Mr. Esgate was receiving a total discount of $3,275.03, resulting in a total sale price of $3,583.58. Home Depot also continued to make representations regarding the regular selling



HATTIS & LUKACS
11711 SE 8th Street, Suite 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

price for each of the products individually. For example, for one of the Levolor Light Filtering Cellular Shades, Home Depot represented that the product had a regular price, i.e., "Unit Price," of $223.57. Home Depot confirmed this in an order confirmation it sent to Mr. Esgate, as shown in the screenshots below.

**Partial Screenshots of Email Order Confirmation**

**Order Summary**
(Includes "Subtotal" Representation of Regular Prices)

Your Payment Details:

| | |
|---|---|
| **Subtotal:** | **$6,858.61** |
| **Shipping:** | **$0.00** |
| **Tax:** | **$0.00** |
| **Discount:** | **($3,275.03)** |
| **Total:** | **$3,583.58** |

**Example Representation of Regular Price**
("Unit Price" Before the "Discount" Applied)

**Light Filtering Cellular Shades**
**Estimated Ship Date:**
**Dec 14, 2021**
**Estimated Delivery Date:**
**Dec 21, 2021 - Dec 29, 2021**
**Quantity:** 1
**Width:** 16 0/0 **Height:** 57 7/8
**Color:**
**Unit Price: $223.57**
**Review Full Order Details**

62.

Mr. Esgate read and relied on Home Depot's price and discount representations in making his purchases.

63.

Based on Home Depot's representations, Mr. Esgate reasonably understood that the products he was purchasing were regularly and usually offered by Home Depot on the website at their advertised list prices (a.k.a. "unit prices"). Mr. Esgate reasonably understood that the advertised list prices were the market value of the products that he was buying. And Mr. Esgate reasonable understood that he was receiving limited-time discounts from the products' regular prices on the website.



HATTIS & LUKACS
11711 SE 8th Street, Suite 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

64.

However, the advertised list prices and discounts for the products Mr. Esgate purchased were false and deceptive. The advertised list prices were not Home Depot's regular offering prices for the products on the website and did not reflect the market value of the products. Mr. Esgate did not receive the advertised discounts as price reductions from the products' regular prices. Unbeknownst to Mr. Esgate, Home Depot had never offered the products at their advertised list prices, including not in the 30 days prior to Mr. Esgate's purchase. (Nor did Home Depot identify in its advertisements a date when it did offer the products at their advertised list prices.)

65.

Home Depot's advertised reference prices and discounts were material misrepresentations and inducements to Mr. Esgate's purchases.

66.

Mr. Esgate reasonably relied on Home Depot's material misrepresentations regarding the advertised reference prices and discounts. If Mr. Esgate had known the truth, he would not have purchased the products at the prices he paid.

67.

As a direct and proximate result of Home Depot's acts and omissions, Mr. Esgate was harmed, suffered an injury-in-fact, and suffered an ascertainable loss of money or property.

68.

When Mr. Esgate purchased his products from Home Depot, he had no suspicion that Home Depot's advertised reference prices and discounts were false. Home Depot gave Mr. Esgate no reason to be suspicious. Mr. Esgate first learned of Home Depot's false advertising scheme in August 2024 when his attorneys told him about Home Depot's unlawful conduct and informed him that he was likely a victim of the scheme. Prior to this, Mr. Esgate did not know or suspect that Home Depot was engaging in a false discount advertising scheme or that he had been a victim of the scheme.



HATTIS & LUKACS
11711 SE 8th Street, Suite 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

69.

Mr. Esgate has a legal right to rely now, and in the future, on the truthfulness and accuracy of Home Depot's representations regarding the advertised reference prices and discounts for its products.

70.

Mr. Esgate faces an imminent threat of future harm. Mr. Esgate would purchase from Home Depot again in the future if he could have confidence regarding the truth of Home Depot's price and discount representations. But without an injunction, Mr. Esgate has no realistic way to know which, if any, of Home Depot's list prices, discounts, and sales are not false or deceptive.

71.

Mr. Esgate will be harmed if, in the future, he is left to guess as to whether Home Depot is providing a legitimate sale or not, and whether products are actually worth the amount that Home Depot is representing.

72.

If Mr. Esgate were to purchase again from Home Depot without Home Depot having changed its unlawful and deceptive conduct alleged herein, Mr. Esgate would be harmed on an ongoing basis and/or would be harmed once or more in the future.

73.

The deceptive practices and policies alleged herein, and experienced directly by Mr. Esgate, are not limited to any single product or group of products. And they are consistent across all of the Home Depot websites (i.e., Blinds.com, JustBlinds.com, and AmericanBlinds.com). Home Depot's deceptive advertising and sales practices, which advertise and state false reference prices and false percentage-off and dollar-off discounts, were, and continue to be, systematic and pervasive across all of Home Depot's products on all of the Home Depot websites.



HATTIS & LUKACS
11711 SE 8th Street, Suite 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

**CLASS ALLEGATIONS**

74.

Plaintiff Ryan Esgate brings this action on behalf of himself and on behalf of the following Class:

> **All persons who, while in Oregon, within the applicable statute of limitations period, purchased one or more products advertised at a discount on the Home Depot websites Blinds.com, JustBlinds.com, and AmericanBlinds.com.**

75.

Specifically excluded from the Class are Home Depot and any entities in which Home Depot has a controlling interest, Home Depot's agents and employees, the bench officers to whom this civil action is assigned, and the members of each bench officer's staff and immediate family.

76.

**Application of the Discovery Rule.** The applicable limitations period and corresponding class period extends back to the date on which Home Depot first engaged in its unlawful false discounting practices based on the discovery rule explicitly provided for in the UTPA. ORS 646.638(6). Based on the investigation of Plaintiff's counsel, Home Depot has engaged in its unlawful false discounting practices since at least August 2020.

77.

Plaintiff and the members of the Class did not know, and could not have reasonably known, about Home Depot's unlawful conduct. "[A] cause of action does not accrue under the discovery rule until the claim has been discovered or, in the exercise of reasonable care, should have been discovered." *FDIC v. Smith* 328 Or. 420, 428, 980 P.2d 141 (1999); *see also Kaseberg v. Davis Wright Tremaine, LLP*, 351 Or. 270, 278 (2011) ("The statute of limitations begins to run when the plaintiff knows or, in the exercise of reasonable care, should have known facts that would make a reasonable person aware of a substantial possibility that each of the elements of a claim exists.").



HATTIS & LUKACS
11711 SE 8th Street, Suite 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

78.

When Plaintiff purchased the blinds and shades from Home Depot, he had no suspicion that Home Depot's advertised reference prices and discounts were false. Home Depot gave Plaintiff no reason to be suspicious. Plaintiff first learned of Home Depot's false advertising scheme in August 2024 when his attorneys told him about Home Depot's unlawful conduct and informed him that he was likely a victim of the scheme. Prior to this, Plaintiff did not know or suspect—and had no reason to suspect—that Home Depot was engaging in a false discount advertising scheme or that he had been a victim of the scheme.

79.

Likewise, Class members would not know or suspect that Home Depot was engaging in this deceptive pricing scheme. Reasonable consumers presume that retailers are not engaging in unlawful conduct. Reasonable consumers would believe that Home Depot's pricing and discount representations were true. Reasonable consumers would believe that Home Depot's list prices (1) represent the regular and normal prices that consumers had to pay for the products; (2) represent the recent former prices of the products (that is, the prices at which the products were regularly offered for sale before the limited-time offer went into effect); and (3) represent the prices that consumers will have to pay for the products when the sale ends. Reasonable consumers would believe that Home Depot's advertised discounts represent a reduction from the regular and recent former prices of the products in the amounts advertised.

80.

Moreover, Plaintiff and the Class could not have, with the exercise of reasonable diligence, discovered Home Depot's false advertising scheme because, by design, its very nature is hidden and impossible for a reasonable consumer to discover—especially regarding products that are purchased infrequently such as window blinds and shades.

81.

Consumers who shopped at Home Depot would have no way of knowing, with the exercise of reasonable diligence, the true daily price histories and past selling prices for the products they viewed and purchased. Consumers would have no way to know, with the exercise



HATTIS & LUKACS
11711 SE 8th Street, Suite 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

of reasonable diligence, that the advertised list prices were fictitious and inflated and that the advertised percentage-off and dollars-off savings were false.

82.

Plaintiff's counsel only found evidence for Home Depot's deceptive pricing scheme by conducting an extensive investigation that no reasonable person would conduct.

83.

**Numerosity.** The number of members of the Class are so numerous that joinder of all members would be impracticable. Plaintiff does not know the exact number of Class members prior to discovery. However, based on information and belief, the Class comprises thousands of individuals. The exact number and identities of Class members are contained in Home Depot's records and can be easily ascertained from those records.

84.

**Commonality and Predominance.** This action involves multiple common legal or factual questions which are capable of generating class-wide answers that will drive the resolution of this case. These common questions predominate over any questions affecting individual Class members, if any. These common questions include, but are not limited to, the following:

a. Whether the alleged conduct of Home Depot violates the Oregon Unlawful Trade Practices Act, ORS 646.605 *et seq*.;

b. Whether Home Depot's alleged unlawful conduct pled herein were willful violations of ORS 646.608;

c. Whether Home Depot engaged in the reckless or knowing use or employment of the unlawful methods, acts or practices alleged herein which have been declared unlawful by ORS 646.608;

d. Whether Plaintiff and the Class have suffered ascertainable losses as a result of Home Depot's unlawful conduct; and

e. Whether Home Depot should be enjoined from engaging in the unlawful conduct alleged herein.



HATTIS & LUKACS
11711 SE 8th Street, Suite 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

85.

**Typicality.** Plaintiff's claims are typical of Class members' claims. Plaintiff and Class members all sustained injury as a direct result of Home Depot's standard practices and schemes, bring the same claims, and face the same potential defenses.

86.

**Adequacy.** Plaintiff and his counsel will fairly and adequately protect Class members' interests. Plaintiff has no interests antagonistic to Class members' interests and is committed to representing the best interests of the Class members. Moreover, Plaintiff has retained counsel with considerable experience and success in prosecuting complex class action and consumer protection cases.

87.

**Superiority.** A class action is superior to all other available methods for fairly and efficiently adjudicating this controversy. Each Class member's interests are small compared to the burden and expense required to litigate each of his or her claims individually, so it would be impractical and would not make economic sense for Class members to seek individual redress for Home Depot's conduct. Individual litigation would add administrative burden on the courts, increasing the delay and expense to all parties and to the court system. Individual litigation would also create the potential for inconsistent or contradictory judgments regarding the same uniform conduct. A single adjudication would create economies of scale and comprehensive supervision by a single judge. Moreover, Plaintiff does not anticipate any difficulties in managing a class action trial.

88.

By its conduct and omissions alleged herein, Home Depot has acted and refused to act on grounds that apply generally to the Class members, such that declaratory relief is appropriate respecting the Class as a whole.

89.

Home Depot is primarily engaged in the business of selling goods. Each cause of action brought by Plaintiff against Home Depot in this Complaint arises from and is limited to



HATTIS & LUKACS
11711 SE 8th Street, Suite 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

statements or conduct by Home Depot that consist of representations of fact about Home Depot's business operations or goods that are or were made for the purpose of obtaining approval for, promoting, or securing sales of or commercial transactions in, Home Depot's goods or the statements are or were made in the course of delivering Home Depot's goods. Each cause of action brought by Plaintiff against Home Depot in this Complaint arises from and is limited to statements or conduct by Home Depot for which the intended audience is an actual or potential customer, or a person likely to repeat the statements to, or otherwise influence, an actual or potential customer.

## CAUSES OF ACTION

### COUNT I
### Violation of the Oregon Unlawful Trade Practices Act
### Oregon Revised Statutes § 646.605 *et seq*.

90.

Plaintiff realleges and incorporates by reference all paragraphs alleged hereinbefore.

91.

Plaintiff pleads this count in two separate capacities: in his individual capacity and as a putative class representative serving on behalf of all others similarly situated.

92.

The Oregon Unfair Trade Practices Act (the "UTPA"), ORS 646.605 *et seq*., is Oregon's principal consumer protection statute. As the Supreme Court of Oregon has explained:

> The civil action authorized by ORS 646.638 is designed to encourage private enforcement of the prescribed standards of trade and commerce in aid of the act's public policies as much as to provide relief to the injured party. This is apparent from the section itself. It allows recovery of actual damages or $200, whichever is greater, plus punitive damages, costs, and attorney fees. . . . The evident purpose is to encourage private actions when the financial injury is too small to justify the expense of an ordinary lawsuit . . . . the legislature was concerned as much with devising sanctions for the prescribed standards of trade and commerce as with remedying private losses, and that such losses therefore should be viewed broadly. The private loss indeed may be so small that the common law likely would reject it as grounds for relief, yet it will support an action under the statute.

*Weigel v. Ron Tonkin Chevrolet Co.*, 298 Or. 127, 134–36, 690 P.2d 488, 493–94 (1984).



HATTIS & LUKACS
11711 SE 8th Street, Suite 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

93.

Under the UTPA, "a person that suffers an ascertainable loss of money or property, real or personal, as a result of another person's willful use or employment of a method, act or practice declared unlawful under ORS 646.608, may bring an individual action in an appropriate court to recover actual damages or statutory damages of $200, whichever is greater. The court or the jury may award punitive damages, and the court may provide any equitable relief the court considers necessary or proper." ORS 646.638(1). The court is also specifically authorized to order injunctive relief "as may be necessary to ensure cessation of unlawful trade practices." ORS 646.636.

94.

The UTPA also permits a plaintiff to maintain a class action and recover the same remedies on behalf of the class, including statutory damages. ORS 646.638(8)(a)-(c).

95.

Defendant is a "person," as defined by ORS 646.605(4).

96.

Home Depot is engaged in "trade" and "commerce" in Oregon by advertising and offering for sale goods with reference prices and discounts to Oregon consumers on its websites that directly or indirectly affect the people of Oregon, as defined by ORS 646.605(8).

97.

Home Depot's products are "goods" that are or may be obtained primarily for personal, family or household purposes, as defined by ORS 646.605(6).

98.

Plaintiff and Class members purchased Home Depot's goods for personal, family, and/or household purposes.

99.

The unlawful methods, acts and practices pled herein were committed in the course of Home Depot's business. ORS 646.608(1).



HATTIS & LUKACS
11711 SE 8th Street, Suite 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

100.

Home Depot's unlawful methods, acts and practices pled herein were "willful violations" of ORS 646.608 because Home Depot knew or should have known that its conduct was a violation, as defined by ORS 646.605(10).

101.

Home Depot's representations of reference prices and discounts are "advertisements" as defined by ORS 646.881(1).

102.

Home Depot's use of reference prices and advertised discounts are "price comparisons" as defined by ORS 646.881(2).

103.

Home Depot's list prices for its products are representations of Home Depot's own "former prices," or in the case of labeled introductory advertisements are representations of Home Depot's "future prices," as defined by ORS 646.885.

104.

By its conduct and omissions alleged herein, Home Depot has committed unlawful methods, acts or practices, including without limitation:

a. Home Depot made false or misleading representations of fact concerning the reasons for, existence of, or amounts of price reductions. ORS 646.608(1)(j);

b. Home Depot advertised price comparisons that violate ORS 646.608(1)(j) by advertising reference prices that do not comply with one of the exceptions enumerated in OAR 137-020-0010(6)(a)-(g);

c. Home Depot advertised former prices that were not prices at which Home Depot, in the regular course of its business, made good-faith sales of the same or similar products or offered in good faith to make sales of the same or similar products within the preceding 30 days or on a date which is identified in the advertisement. OAR 137-020-0010(6)(a); ORS 646.608(1)(j);



HATTIS & LUKACS
11711 SE 8th Street, Suite 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

d. Home Depot engaged in price comparison advertising in violation of ORS 646.883(2) by failing to comply with ORS 646.608(1)(j) and ORS 646.608(4). ORS 646.608(ee);

e. Home Depot engaged in price comparison advertising in violation of ORS 646.885(1) by using terms such as "regular," "reduced," "sale," "usually," "originally," "clearance," "liquidation," and/or "formerly" where the reference price was not in fact Home Depot's own former price, or in the case of introductory advertisements, was not Home Depot's future price. ORS 646.608(ee);

f. Home Depot engaged in price comparison advertising in violation of ORS 646.885(2) by using terms such as "___ percent off," "$___ off," "___ percent discount" and/or "$___ discount" where the reference price was not in fact Home Depot's own former price, or in the case of introductory advertisements, was not Home Depot's future price. ORS 646.608(ee); and

g. Home Depot engaged in other unfair or deceptive conduct in trade or commerce, as described herein. ORS 646.608(1)(u); ORS 646.608(4).

105.

Home Depot engaged in the reckless or knowing use or employment of the unlawful methods, acts or practices alleged herein which have been declared unlawful by ORS 646.608.

106.

With respect to any omissions, Home Depot at all relevant times had a duty to disclose the information in question because, inter alia: (a) Home Depot had exclusive knowledge of material information that was not known to Plaintiff and Class members; (b) Home Depot concealed material information from Plaintiff and Class members; and (c) Home Depot made partial representations, which were false and misleading absent the omitted information.

107.

Home Depot's misrepresentations and nondisclosures deceive and have a tendency to deceive a reasonable consumer and the general public.



HATTIS & LUKACS
11711 SE 8th Street, Suite 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

108.

Home Depot's misrepresentations are material, in that a reasonable person would attach importance to the information and would be induced to act on the information in making purchase decisions.

109.

As a direct, substantial, and/or proximate result of Home Depot's unlawful conduct, Plaintiff and Class members were harmed, suffered injury-in-fact, and suffered ascertainable losses of money or property.

110.

Plaintiff and Class members reasonably relied on Home Depot's material misrepresentations, and would not have purchased Home Depot's products at the prices that they paid had they known the truth.

111.

By its conduct and omissions alleged herein, Home Depot caused the demand for its products to be artificially increased and caused all customers, including Plaintiff and Class members, to pay price premiums to Home Depot. Put differently, as a result of its misrepresentations, Home Depot has been able to charge a price premium for its products that it would not be able to charge absent the misrepresentations.

112.

**Permanent injunctive relief.** Home Depot's conduct alleged herein caused substantial injury to Plaintiff, the Class, and the general public. Home Depot's misconduct is ongoing in whole or in part, and even if such conduct were to cease, it is behavior that is capable of repetition or re-occurrence by Home Depot absent a permanent injunction. Accordingly, Plaintiff seeks an order enjoining Home Depot from committing the unlawful practices alleged herein. Plaintiff also seeks attorneys' fees and costs.

113.

The balance of the equities favors the entry of permanent injunctive relief against Home Depot. Plaintiff, the members of the Class, honest competing businesses, and the general public



HATTIS & LUKACS
11711 SE 8th Street, Suite 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

will be irreparably harmed from Home Depot's ongoing false advertising absent the entry of permanent injunctive relief against Home Depot.

114.

Plaintiff lacks an adequate remedy at law to prevent Home Depot from engaging in the unlawful practices alleged herein. Plaintiff would shop at the Home Depot websites again if he could have confidence regarding the truth of Home Depot's prices and the value of its products. Plaintiff will be harmed if, in the future, he is left to guess as to whether Home Depot is providing a legitimate sale or not, and whether Home Depot's products are actually worth the amount that Home Depot is representing.

115.

Monetary damages are not an adequate remedy at law for future harm. *Clark v. Eddie Bauer LLC*, No. 21-35334, 2024 WL 177755, at *3 (9th Cir. Jan. 17, 2024). Monetary damages are inadequate for future harm for the following reasons, without limitation: First, damages are not an adequate remedy for future harm because they will not prevent Home Depot from engaging in its unlawful conduct. Second, damages for future harm cannot be calculated with certainty and thus cannot be awarded. For example, it is impossible to know what product(s) Plaintiff may want or need in the future. Third, injunctive relief is necessary (and monetary damages do not provide a plain, adequate and complete remedy) because, without forward-looking injunctive relief enjoining the unlawful practices, the courts would be flooded with future lawsuits by Class members, Plaintiff, and the general public for future violations of the law by Home Depot.

116.

Plaintiff does not seek damages at this time, only equitable relief. ORCP 32(J).

117.

Plaintiff is providing notice as required by ORCP 32(H). Per ORCP 32(J), not less than 30 days after the commencement of this action, Plaintiff intends to amend the Complaint to request damages for himself and on behalf of the other class members if Home Depot does not comply with ORCP 32(I), which requires Home Depot to: provide the identity and contact



HATTIS & LUKACS
11711 SE 8th Street, Suite 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

information of each putative class member; notify each putative class member that upon request Home Depot will make the appropriate compensation, correction, or remedy of the alleged wrong; provide such compensation, correction, or remedy to each putative class member; and cease from engaging in the methods, acts, or practices alleged to be violative of the rights of the putative class members.

## PRAYER FOR RELIEF

On behalf of himself and the proposed Class, Plaintiff requests that the Court order relief and enter judgment against Defendants Home Depot U.S.A., Inc., and Global Custom Commerce L.P. (collectively, "Home Depot") as follows:

1. Declare this action to be a proper class action, certify the proposed Class, and appoint Plaintiff and his counsel to represent the Class;

2. Declare that the discovery rule, pursuant to, without limitation, ORS 646.638(6), applies and that the applicable limitations period—and the corresponding class period—extends back to the first date that Home Depot began engaging in the unlawful conduct alleged herein;

3. Declare that Home Depot's conduct alleged herein violates the UTPA;

4. Permanently enjoin Home Depot from engaging in the unlawful conduct alleged herein;

5. Order that Home Depot maintain the following records for each daily product offering for at least two years from the date of each advertisement and/or offer for sale of the product, for auditing purposes to ensure compliance with the ordered injunctive relief: (1) the advertised list price for each product; (2) the offer price and/or net selling price of each item; and (3) any discount percentage and/or any other discount that was advertised and/or applicable to each product;

6. Retain jurisdiction to monitor Home Depot's compliance with the permanent injunctive relief;

7. Order any other equitable relief the Court deems appropriate;

8. Order Home Depot to pay attorneys' fees, costs, and pre-judgment and post-judgment interest to the extent allowed by law; and



HATTIS & LUKACS
11711 SE 8th Street, Suite 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

9. Grant such other relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on all issues so triable.

Date: August 30, 2024.

Presented by:

HATTIS & LUKACS

By: /s/ Che Corrington
Che Corrington

Che Corrington, OSB No. 216151
Email: che@hattislaw.com
Daniel M. Hattis (*pro hac vice* to be submitted)
Email: dan@hattislaw.com
HATTIS & LUKACS
11711 SE 8th Street, Suite 120
Bellevue, WA 98005
Telephone: (425) 233-8650

*Attorneys for Plaintiff*
*and the Proposed Class*