UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| RYAN ESGATE, *for himself and on behalf of all others similarly situated*,<br><br>     Plaintiff,<br>  v.<br><br>HOME DEPOT U.S.A., INC., *d/b/a* Blinds.com, Justblinds.com, and Americanblinds.com,<br><br>     Defendant. | Case No. 6:24-cv-01806-MTK<br><br>**OPINION AND ORDER** |

**KASUBHAI,** United States District Judge:

Plaintiff Ryan Esgate, individually and on behalf of all others similarly situated, alleges that Defendant Home Depot U.S.A., Inc., d/b/a Blinds.com, JustBlinds.com, and AmericanBlinds.com violated Oregon's consumer protection laws by advertising false or misleading discounts on its websites. First Amended Complaint ("FAC"), ECF No. 1-3. Before the Court is Defendant's Motion to Dismiss for lack of personal jurisdiction and failure to state a

claim. Corrected Motion to Dismiss ("Def.'s Mot."), ECF No. 17.[1] For the reasons explained below, Defendant's motion is DENIED.

## BACKGROUND

The following allegations are accepted as true for purposes of this Opinion. Defendant markets and sells blinds, shades, and other window covering products online directly to consumers through its websites. FAC ¶ 14. On November 5, 2021, Plaintiff ordered samples from Blinds.com, and on November 29, 2021, he revisited Blinds.com to complete his purchase. Greenwood Decl., Ex. 2 ("Order History") at 1, ECF No. 15-2.[2] On November 5, 2021, Blinds.com was offering a 45% discount sitewide as part of a Veterans Day Sale, ending November 11, 2021. Greenwood Decl., Ex. 3 ("Screen Shots") at 1, ECF No. 15-3. When Plaintiff revisited Blinds.com on November 29, 2021, Blinds.com was offering 45% off everything plus an extra 5% off every order as part of a Cyber Monday sale, ending December 1, 2021. Screen Shots at 5. Based on Defendant's representations, Plaintiff believed that he needed to act fast and purchase the products before they returned to their normal full prices in three days. FAC ¶ 59. During the online checkout process, Defendant represented to Plaintiff that the combined regular selling price, or list price, for the products was $6,858.61 and that he was receiving a total discount of $3,275.03, resulting in a net "sale" price of $3,583.58. FAC ¶ 62. Defendant shipped the products to Plaintiff in Oregon in its ordinary course of business. FAC ¶¶ 1–2, 90.

---

[1] Defendant's Corrected Motion to Dismiss supersedes the Motion to Dismiss (ECF No. 14) which the Court DENIES as MOOT.
[2] The exhibits attached the Greenwood Declaration were submitted as part of Defendant's Request for Judicial Notice (ECF No. 16) which Plaintiff does not oppose (Pl.'s Resp. at 9, ECF No. 20). The Court grants Defendant's Request for Judicial Notice.

Based on Defendant's representations, Plaintiff believed that the products he was purchasing were regularly and usually offered by Defendant on the Website at their advertised list prices (which Defendant also described as "unit prices" on the order confirmation email). FAC ¶ 64. It appeared to Plaintiff that the advertised list prices were the market value of the products that he was buying and that he was receiving a limited-time discount. *Id.*

Unknown to Plaintiff, Defendant had never offered the products at their advertised list prices. FAC ¶ 65. Defendant's alleged advertising and pricing scheme consists of never-ending sales; when one sale ends, the sale is either extended or another sale offering similar discounts immediately takes its place. FAC ¶ 25. Plaintiff alleges that because the products are never offered at their list price, Defendant's advertised list prices and purported discounts are material misrepresentations. FAC ¶ 66. Defendant's advertising and pricing scheme induces consumers such as Plaintiff to purchase the products on the its websitess. FAC ¶ 15. Because the consumer believes they are getting something below the list price, Defendant is able to increase the amount it can charge for its products. *Id.*

But for Defendant's false and misleading advertising and pricing scheme, Plaintiff would not have purchased the products at the price he paid. FAC ¶ 67. When Plaintiff purchased his products from Defendant, he had no suspicion that Defendant's advertised list prices and discounts were false. FAC ¶ 69. He first learned of Defendant's allegedly false advertising scheme in August 2024 when his attorneys informed him that he was likely a victim of the alleged scheme. *Id.* Prior to this, Plaintiff did not know or suspect that Defendant was engaging in a false discount advertising scheme or that he had been a victim of the scheme. *Id.* Plaintiff filed his original complaint within a month of his attorneys' disclosure. Notice of Removal, Ex. A (Original Complaint), ECF No. 1-1 (filed August 30, 2024).

Plaintiff brings this suit in his individual capacity, alleging violations of Oregon's Unlawful Trade Practices Act ("UTPA"), Or. Rev. Stat. ("ORS") § 646.605 *et seq*. Plaintiff also brings a class action on behalf of people who, while in Oregon, purchased one or more products advertised at a discount on the Defendant's websites. FAC ¶ 76. Plaintiff seeks (1) statutory or actual damages; (2) punitive damages; (3) appropriate equitable relief; (4) attorney's fees and costs; and (5) permanent injunctive relief. FAC ¶¶ 114–15. With regards to the injunctive relief, Plaintiff seeks an Order prohibiting Defendant from perpetuating its pricing scheme so that he can know whether Defendant is providing a legitimate sale or not, and whether its products are worth the purported list price. FAC ¶ 72. Plaintiff alleges that he would purchase from Defendant's websites in the future if he could have confidence regarding the truth of Defendant's price and discount representations. FAC ¶ 71.

## STANDARDS

### I. Personal Jurisdiction — Fed. R. Civ. P. 12(b)(2)

Under Fed. R. Civ. P. 12(b)(2), a defendant may move to dismiss for lack of personal jurisdiction. When a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is appropriate. *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). When the court's determination "is based on written materials rather than an evidentiary hearing, 'the plaintiff need only make a prima facie showing of jurisdictional facts.'" *Id.* (quoting *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990)). And "uncontroverted allegations in the complaint must be taken as true." *Id.*

### II. Failure to State a Claim — Fed. R. Civ. P. 12(b)(6)

A motion to dismiss for failure to state a claim may be granted only when there is no cognizable legal theory to support the claim or when the complaint lacks sufficient factual allegations to state a facially plausible claim for relief. *Los Angeles Lakers, Inc. v. Fed. Ins. Co.*,

869 F.3d 795, 800 (9th Cir. 2017). In evaluating the sufficiency of a complaint's factual allegations, the court must accept as true all well-pleaded material facts alleged in the complaint and construe them in the light most favorable to the non-moving party. *Id.* To be entitled to a presumption of truth, allegations in a complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). All reasonable inferences from the factual allegations must be drawn in favor of the plaintiff. *Los Angeles Lakers, Inc.*, 869 F.3d at 800. The court need not, however, credit the plaintiff's legal conclusions that are couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

A complaint must contain sufficient factual allegations to "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr*, 652 F.3d at 1216. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

## DISCUSSION

Plaintiff alleges that Defendant, in its regular course of business, (1) operated a universally accessible interactive website and (2) sold him and other Oregon residents products in a manner that violated the UTPA. Defendant moves to dismiss, asserting lack of personal jurisdiction, lack of standing, and failure to state a claim for untimeliness.

The UTPA authorizes "private plaintiffs to seek actual or statutory damages if they [have] suffered an 'ascertainable loss of money or property' as a result of any trade practice that the UTPA deem[s] unlawful." *Clark v. Eddie Bauer LLC*, 371 Or. 177, 184 (2023) (quoting ORS 646.638(1)). Plaintiff alleges that Defendant engaged in unlawful trade practices by making false or misleading representations about the price of its products and purported price reductions. *See* ORS 646.608(1)(j), ORS 646.608(1)(ee), and ORS 646.608(1)(u).

Plaintiff's claims rely on the "purchase price theory" of an ascertainable loss. The Oregon Supreme Court explains:

> At its essence, the purchase price theory is that one person has been induced by another person's unlawful activities to pay money for something that the first person would not otherwise have bought. In plaintiff's case, what she wanted was items of clothing whose selling price had, at some earlier time, been what defendants' false price listings indicated. What she received, on the other hand, was merchandise that had never been offered for sale at those prices. Thus, whether or not those items ever *sold* at those higher price points, and whether or not defendants' alleged pricing scheme can be viewed as representing that the items previously had retail or market values equivalent to the prices shown on their product tags, plaintiff paid money to defendants for articles of clothing that she would not have bought had she known their true price history. The money that plaintiff is out as a result is her "loss."

*Clark*, 371 Or. at 194. Plaintiff alleges that Defendant's advertising and pricing practices misrepresent its products' price history because the products are *always* sold at the discounted price. Plaintiff alleges that he suffered an ascertainable loss because he would not have purchased the products at the price that he paid but for Defendant's alleged pricing scheme.

## I.  Personal Jurisdiction

Defendant argues that the Court lacks personal jurisdiction over it. The Court's explanation and conclusion are straightforward: Plaintiff alleges that Defendant, as a part of its regular course of business, sold and shipped a product to Plaintiff in Oregon that he would not have purchased but for Defendant's unlawful advertising and pricing practices. These allegations

plausibly state a claim under the UTPA. *Clark*, 371 Or. at 194. Under these alleged circumstances, subjecting Defendant to suit in Oregon is foreseeable and reasonable. Which is to say, the Court has personal jurisdiction over Defendant. Nonetheless, the Court proceeds with the necessary legal analysis.

Unless a federal statute governs personal jurisdiction, a district court applies the law of the forum state. *See Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008) (citing *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998)). Oregon's long-arm statute is co-extensive with constitutional standards. *Gray & Co. v. Firstenberg Mach. Co.*, 913 F.2d 758, 760 (9th Cir. 1990) (citing Or. R. Civ. P. 4(L)); *State, ex rel. Hydraulic Servocontrols Corp. v. Dale*, 294 Or. 381 (1982). The Court must therefore determine whether the exercise of personal jurisdiction over Defendant is consistent with constitutional due process. *See Boschetto*, 539 F.3d at 1015; *see also State, ex rel. Hydraulic Servocontrols Corp.*, 294 Or. 381.

Constitutional due process requires that the defendant "have certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citations omitted).

"A nonresident corporation may be subject to either general or specific personal jurisdiction." *Briskin v. Shopify, Inc.*, No. 22-15815, 2025 WL 1154075, at *6 (9th Cir. Apr. 21, 2025). Under general personal jurisdiction, a court may "hear 'any and all claims against defendants when their affiliations with the State are so continuous and systematic as to render them essentially at home in the forum State.'" *Id.* (brackets and internal quotation marks removed) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919

(2011)). Defendant does not reside in Oregon and Plaintiff does not attempt to make a showing that Defendant is subject to general personal jurisdiction for its conduct in this case.

The Court therefore turns "to longstanding principles governing the exercise of specific personal jurisdiction." *Briskin*, 2025 WL 1154075, at *6. The Ninth Circuit applies a three-prong test to determine if the exercise of specific jurisdiction over a nonresident defendant (such as Defendant) is appropriate:

> (1)   The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2)   the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3)   the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger*, 374 F.3d at 802. The plaintiff bears the burden as to the first two prongs, but if both are established, then "the defendant must come forward with a 'compelling case' that the exercise of jurisdiction would not be reasonable." *Boschetto*, 539 F.3d at 1016 (quoting *Schwarzenegger*, 374 F.3d at 802).

### A.   Specific Jurisdiction Prong One: Whether Defendant's Activities Were Purposefully Directed Towards the Forum

"The first prong of the specific-jurisdiction inquiry embodies two distinct, although sometimes conflated, concepts: 'purposeful availment' and 'purposeful direction.'" *Herbal Brands, Inc. v. Photoplaza, Inc.*, 72 F.4th 1085, 1090 (9th Cir. 2023), *cert. denied,* 144 S. Ct. 693 (2024) (quoting *Glob. Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A.*, 972 F.3d 1101, 1107 (9th Cir. 2020)). "A purposeful availment analysis is most often used in suits

sounding in contract. A purposeful direction analysis, on the other hand, is most often used in suits sounding in tort." *Schwarzenegger*, 374 F.3d at 802 (internal citations omitted).

The Court applies the purposeful direction test because Plaintiff's claim under the UTPA "requires an intentional tortious or 'tort-like' act." *Herbal Brands, Inc.*, 72 F.4th at 1091 (applying the purposeful direction analysis to a false advertising claim).

To determine whether a defendant "purposefully directed" its activities toward the forum, the Court, in turn, applies the "effects" test derived from *Calder v. Jones*, 465 U.S. 783 (1984). "The *Calder* effects test asks 'whether the defendant: (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state.'" *Herbal Brands, Inc.*, 72 F.4th at 1091 (quoting *Will Co. v. Lee*, 47 F.4th 917, 922 (9th Cir. 2022) (quotation marks omitted).

1. *Calder* Effects Test: Intentional Action

Defendant committed an intentional act by advertising, selling, and shipping products to Plaintiff and therefore "easily satisfies" the first element of the *Calder* effects test. *Herbal Brands, Inc.*, 72 F.4th at 1091.

2. *Calder* Effects Test: Express Aiming

The second element of the *Calder* effects test asks whether the defendant's intentional act was expressly aimed at the forum state. Defendant argues that the intentional act at issue is Defendant's online advertising and pricing practices. According to Defendant, Plaintiff cannot show that Defendant's online activities, as opposed to its sale of physical products, were expressly aimed at Oregon.

When a plaintiff's claims arise out of the defendant's operation of a website, "the express aiming inquiry does not require a showing that the defendant targeted its advertising or

operations at the forum." *Id.* at 1094. Rather, express aiming in this context is shown by the operation of an interactive website plus "something more" directed at the forum. *Id.* at 1091.

For example, "the sales of physical products into a forum via an interactive website" constitutes "something more" sufficient to establish express aiming, "provided that two key elements are present." *Id.* at 1094. The Ninth Circuit explains:

> First, the sales must occur as part of the defendant's regular course of business instead of being 'random, isolated, or fortuitous.' . . . [And s]econd, the defendant must exercise some level of control over the ultimate distribution of its products beyond simply placing its products into the stream of commerce.

*Id.*

Here, the parties do not dispute that Defendant's website, Blinds.com, is an interactive e-commerce website. FAC ¶¶ 53, 60–62. Contrary to Defendant's argument, the fact that Plaintiff is satisfied with the quality of the products that he purchased is immaterial. Under the UTPA, a consumer can be harmed when "the violation arises from a representation about the product's price, comparative price, or price history, but not about the character or quality of the product itself[.]" *Clark*, 371 Or. at 179. Defendant's allegedly unlawful advertising and pricing scheme caused Plaintiff to make a purchase which it shipped to Plaintiff, resulting in an ascertainable loss.

Defendant's sales of physical products into the forum via its interactive website constitutes "something more" sufficient to establish express aiming. First, the sale occurred as part of Defendant's regular course of business. FAC ¶ 2. And second, Defendant exercised an adequate level of control over the distribution of its products by shipping Plaintiff's purchase to him in Oregon.

### 3. *Calder* Effects Test: Foreseeability of Harm in the Forum

The third element of the *Calder* effects test asks whether the conduct at issue caused harm in the forum state and whether "that harm was foreseeable." *Will Co.*, 47 F.4th at 926. When a plaintiff alleges that they were harmed by a product "then the shipment of that product to the plaintiff's forum would suffice to show that the defendant knew that the harm 'is likely to be suffered in the forum state.'" *Herbal Brands, Inc.*, 72 F.4th at 1091 n.2 (quoting *Will Co.*, 47 F.4th at 922).

As described above, Plaintiff suffered a harm by purchasing products that he allegedly would not have but for Defendant's advertising and pricing practices. Plaintiff's allegation that Defendant willfully violated the UTPA, if proved, establishes that Defendant knew that its advertising and pricing practices would likely harm Plaintiff in Oregon where he allegedly suffered an ascertainable loss.

In sum, application of the *Calder* effects test shows Plaintiff plausibly alleges that Defendant's activities were purposefully directed towards the forum state.

### B. Specific Jurisdiction Prong Two: Whether Plaintiff's Claims Arise Out of or Relate to Defendant's Forum-Related Activities

"The second prong of the specific-jurisdiction inquiry requires that a plaintiff's claims 'arise out of or relate to the defendant's contacts with the forum.'" *Herbal Brands, Inc.*, 72 F.4th at 1096 (quoting *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021) (quotation marks omitted). "Or put just a bit differently, 'there must be an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.'" *Ford Motor Co.*, 592 U.S. at 359–60 (quoting *Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cnty.*, 582 U.S. 255, 262 (2017)) (quotation marks and brackets omitted). "The place of a plaintiff's

injury and residence may be relevant in assessing the link between those connections and the plaintiff's suit." *Ford Motor Co.*, 592 U.S. at 353. "[A]lthough physical presence in the forum is not a prerequisite to jurisdiction, physical entry into the State—either by the defendant in person or through an agent, goods, mail, or some other means—is certainly a relevant contact." *Walden v. Fiore*, 571 U.S. 277, 285 (2014).

Plaintiff is an Oregon resident alleging that that he was harmed in Oregon by Defendant's allegedly unlawful advertising and pricing practices. Defendant argues that Plaintiff cannot show that its advertising and pricing practices are sufficiently related to Oregon because it does not target Oregon residents with its advertising or pricing practices. Again, Defendant construes the nature of Plaintiff's alleged harm too narrowly. Under the UTPA, if a seller causes a consumer to make a purchase at a price that he would not have but for the seller's unlawful advertising and pricing practices, then the consumer is harmed not only by the seller's practice but also by the consumer's purchase. *Clark*, 371 Or. at 179. Whether Defendant's advertising and pricing practices are targeted towards Oregon is not dispositive. Defendant regularly sells the products that it sold to Plaintiff to other Oregon residents using the same advertising and pricing practices. Plaintiff's claims therefore arise out of and relate to Defendant's forum related activities. *Herbal Brands, Inc.*, 72 F.4th at 1096. ("Plaintiff's claims—which allege harm caused by Defendants' sales of products—clearly arise out of and relate to Defendants' conduct of selling those same products to Arizona residents."); *Briskin*, 2025 WL 1154075, at *14 (a claim "relates to" the defendant's forum contacts when "the kind of injury" would "tend to be caused" by the defendant's contacts with the forum's merchants and consumers).

C. **Specific Jurisdiction Prong Three: Whether the Exercise of Personal Jurisdiction Over Defendant Is Reasonable**

Once the court determines that a defendant has the requisite contacts with the forum state, the burden "shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Schwarzenegger*, 374 F.3d at 802 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476–78 (1985)). To evaluate reasonableness, the Ninth Circuit employs a balancing test weighing seven factors:

> (1) the extent of the defendant's purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

*Herbal Brands, Inc.*, 72 F.4th at 1096 (quoting *Freestream Aircraft (Bermuda) Ltd. v. Aero L. Grp.*, 905 F.3d 597, 607 (9th Cir. 2018)).

Defendant argues that "the exercise of personal jurisdiction over Plaintiff's claims in Oregon would be unreasonable because Plaintiff has not established sufficient minimum contacts between Oregon and [Defendant's] alleged advertising practices on Blinds.com." Def.'s Reply 9 n.4, ECF No. 24. Defendant does not address any of the seven factors above and fails to carry its burden of presenting a compelling case that the exercise of jurisdiction would not be reasonable.

The Court finds that it has personal jurisdiction because Defendant's contacts with Oregon are such that "the maintenance of th[is] suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945) (quotation marks omitted).

**II.    Statute of Limitations and the Discovery Rule**

Actions brought under the UTPA "must be commenced within one year after the discovery of the unlawful method, act or practice." ORS 646.638(6). Plaintiff filed suit more than a year after he made his purchases from Blinds.com. Defendant argues that the discovery rule does not apply because a reasonably diligent person would have uncovered Defendant's pricing and advertising practices within one year of Plaintiff's November 2021 interactions with Blinds.com.

Under the discovery rule, the statute of limitations does not begin to run until a plaintiff knows or should have known the existence of a legally cognizable claim. *Doe 1 v. Lake Oswego Sch. Dist.*, 353 Or. 321, 327–28 (2013); *Morris v. Dental Care Today, P.C.*, 306 Or. App. 259, 261 (2020) ("The UTPA statute of limitations begins to run when the plaintiff knows or should have known of the allegedly unlawful conduct."). The rule "avoids the mockery that would follow if the law were to say to one who had been wronged, you had a remedy, but before the wrong was ascertainable to you, the law stripped you of your remedy." *Doe 1*, 353 Or. at 327 (quotations and brackets omitted). "The discovery rule applies an objective standard—how a reasonable person of ordinary prudence would have acted in the same or a similar situation." *Kaseberg v. Davis Wright Tremaine, LLP*, 351 Or. 270, 278 (2011).

Whether the plaintiff should have known that the defendant's conduct was false or misleading in violation of the UTPA "depends on a two-step analysis." *Mathies v. Hoeck*, 284 Or. 539, 543 (1978). First, a plaintiff must have had sufficient knowledge to "excite attention and put a party upon his guard or call for an inquiry notice." *Id.* If the plaintiff's knowledge would not "excite [the] attention" of a reasonable person, then the inquiry ends because a reasonable person would not have investigated further to discover the injury. *Id.* But if the plaintiff's knowledge created a duty to investigate, then second, "it must also appear that 'a reasonably

diligent inquiry would disclose' the fraud." *Id.* (quoting *Wood v. Baker*, 217 Or. 279, 287 (1959)). Application of the discovery rule presents questions of fact which ordinarily cannot be resolved as a matter of law. *T.R. v. Boy Scouts of Am.*, 344 Or. 282, 296 (2008).

Here, on November 5, 2021, Plaintiff ordered samples from Blinds.com, and on November 29, 2021, he revisited Blinds.com to complete his purchase. Order History at 1. On November 5, 2021, Blinds.com was offering a 45% discount sitewide as part of a Veterans Day Sale. Screen Shots at 1. When Plaintiff revisited Blinds.com on November 29, 2021, Blinds.com was offering 45% off everything plus an extra 5% off every order as part of a Cyber Monday sale. Screen Shots at 5. Plaintiff filed his original complaint approximately three years later. Original Complaint (filed August 30, 2024).

Plaintiff alleges that his claims did not begin to accrue until August 2024, when his lawyers informed him that he was likely a victim of Defendant's unlawful trade practices. FAC ¶ 79. He filed suit that same month. Defendant argues that Plaintiff knew that Blinds.com was running a promotion during both visits to the website. This knowledge, according to Defendant, should have put Plaintiff on guard, creating a duty to investigate his claims beginning in November 2021.

Plaintiff's visits to Blinds.com coincided with two known retail sales events. His Blinds.com visits were approximately three weeks apart. Knowledge of these facts would not excite the attention of a reasonable person. Based on the allegations and limited record before the Court, Plaintiff's interactions with Blinds.com did not create a duty to investigate whether the promotions were false or misleading. The inquiry into whether the discovery rule applies ends there. Plaintiff plausibly alleges that he filed suit within one year of discovering Defendant's allegedly unlawful trade practices.

### III. Standing

Defendant argues that Plaintiff's claims relating to JustBlinds.com, AmericanBlinds.com, and products he never purchased from Blinds.com should be dismissed because he lacks standing to pursue these claims. Plaintiff responds that Defendant wrongly "conflates standing and class certification." Pl.'s Resp. at 26 (quoting *Melendres v. Arpaio*, 784 F.3d 1254, 1261 (9th Cir. 2015)).

"*Standing* is meant to ensure that the injury a plaintiff suffers defines the scope of the controversy he or she is entitled to litigate. *Class certification*, on the other hand, is meant to ensure that named plaintiffs are adequate representatives of the unnamed class." *Melendres*, 784 F.3d at 1261. "The 'standing approach' treats dissimilarities between the claims of named and unnamed plaintiffs as affecting the 'standing' of the named plaintiff to represent the class." *Id.* "The 'class certification approach,' on the other hand, 'holds that once the named plaintiff demonstrates her individual standing to bring a claim, the standing inquiry is concluded, and the court proceeds to consider whether the Rule 23(a) prerequisites for class certification have been met.'" *Id.* (quoting 1 William B. Rubenstein, Newberg on Class Actions § 2:6 (5th ed.)).

The Ninth Circuit applies "the class certification approach." *Id.* at 1262 (9th Cir. 2015). Under the class certification approach, "'representative parties who have a direct and substantial interest have standing; the question whether they may be allowed to present claims on behalf of others who have similar, but not identical, interests depends not on standing, but on an assessment of typicality and adequacy of representation.'" *Id.* (brackets omitted) (quoting 7AA Charles Alan Wright et al., Federal Practice & Procedure § 1785.1 (3d ed.)).

Defendant's argument that Plaintiff lacks standing to sue for products he did not purchase on Blinds.com or that were sold on Justblinds.com and Americanblinds.com is a premature attack on the typicality, adequacy, and commonality requirements of Rule 23. *Nunez v. Saks Inc.*,

771 F. App'x 401, 402 (9th Cir. 2019) (unpublished) (in suit alleging false pricing, "district court erred by concluding at the pleading stage that Nunez lacked standing to assert claims on behalf of putative class members. Because Nunez has demonstrated standing to pursue his individual claims, the district court should have deferred consideration of whether he was an adequate class representative until the class certification stage of proceedings."). Plaintiff's allegations demonstrate that he has standing to pursue his individual claim under the UTPA for the purchases he made from Blinds.com. Whether Plaintiff may represent a class that includes consumers who purchased different products from Defendant's three websites is not before the Court at this time.

## IV.    Equitable Relief

Defendant argues that Plaintiff's claims for equitable relief fail because he has an adequate remedy at law, and he lacks standing to seek future injunctive relief.

### A.    Adequate Remedy at Law

In his prayer for relief, Plaintiff requests that the Court "[o]rder any other equitable relief the Court deems appropriate." Prayer for Relief ¶ 9, FAC at 51. Defendant argues that Plaintiff cannot request "other equitable relief" because damages are an adequate remedy at law available under the UTPA. Def.'s Mot. at 26 (citing *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020)).

In *Sonner*, the plaintiff "voluntarily dismissed her sole state law damages claim and chose to proceed with only state law equitable claims for restitution and injunctive relief" for the "singular and strategic purpose" of trying the "class action as a bench trial rather than to a jury." 971 F.3d 834, 837 (9th Cir. 2020). The district court granted the defendant's motion to dismiss, and the Ninth Circuit affirmed, holding the plaintiff was not entitled to equitable relief because she (1) did not allege that she lacked an adequate legal remedy and (2) conceded that she sought

Page 17 — OPINION AND ORDER

the same sum in equitable restitution as she had previously requested in damages for her statutory claim. *Id.* at 844.

In contrast, here, Plaintiff alleges that:

> [m]onetary damages are not an adequate remedy at law for future harm. *Clark v. Eddie Bauer LLC*, No. 21-35334, 2024 WL 177755, at *3 (9th Cir. Jan. 17, 2024). Monetary damages are inadequate for future harm for the following reasons, without limitation: First, damages are not an adequate remedy for future harm because they will not prevent Defendant from engaging in its unlawful conduct. Second, damages for future harm cannot be calculated with certainty and thus cannot be awarded. For example, it is impossible to know what Product(s) Plaintiff may want or need in the future. Third, injunctive relief is necessary (and monetary damages do not provide a plain, adequate and complete remedy) because, without forward-looking injunctive relief enjoining the unlawful practices, the courts would be flooded with future lawsuits by Class members, Plaintiff, and the general public for future violations of the law by Defendant.

FAC ¶ 118.

In addition to an injunction, other equitable remedies could include declaratory relief, ordering specific performance, or ordering Defendant to perform an accounting. Plaintiff plausibly alleges that the remedies available under the UTPA are inadequate to remedy Defendant's alleged harm.

    **B.**    **Standing to Seek Future Injunctive Relief**

Defendant argues that Plaintiff lacks standing to obtain an injunction because he does not allege any concrete plans to make future purchases from Blinds.com.

"To establish injury in fact [for Article III standing], a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). Under *Davidson v. Kimberly-Clark Corp.*, "a previously deceived consumer may have standing to seek an injunction against false advertising or labeling, even though the consumer now knows or suspects that the

advertising was false at the time of the original purchase, because the consumer may suffer an 'actual and imminent, not conjectural or hypothetical' threat of future harm." 889 F.3d 956, 969 (9th Cir. 2018) (citation omitted). This is because "[k]nowledge that the advertisement or label was false in the past does not equate to knowledge that it will remain false in the future" and "the threat of future harm may be the consumer's plausible allegations that she will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the products although she would like to." *Id.* at 969–70.

> Here, Plaintiff alleges that he:
>
> would purchase from then [*sic*] Website again in the future if he could have confidence regarding the truth of Defendant's price and discount representations. But without an injunction, Mr. Esgate has no realistic way to know which, if any, of Defendant's list prices, discounts, and "sales" for its products are not false or deceptive.
>
> Mr. Esgate will be harmed if, in the future, he is left to guess as to whether Defendant is providing a legitimate sale or not, and whether its products are actually worth the amount that Defendant is representing.

FAC ¶¶ 71–72. Plaintiff's alleged injury is entirely consistent with the Ninth Circuit's recent application of *Davidson* in this same context. *Clark v. Eddie Bauer LLC*, No. 21-35334, 2024 WL 177755, at *3 (9th Cir. Jan. 17, 2024) (unpublished) (alleging purchase price theory of injury asserted under the UTPA, allegation that the plaintiff would like to make purchases in the future but cannot trust the validity of the seller's pricing advertisements establishes standing for injunctive relief). Plaintiff alleges that he would make purchases in the future but for his inability to trust the validity of Defendant's advertising. Plaintiff has standing to seek injunctive relief because he plausibly alleges a concrete and particularized harm that is actual and imminent.

## CONCLUSION

For the reasons above, Defendant's Corrected Motion to Dismiss (ECF No. 17) is DENIED; Defendant's Motion to Dismiss (ECF No. 14) is DENIED as MOOT; and Defendant's Unopposed Request for Judicial Notice (ECF No. 16) is GRANTED.

DATED this 24th day of April 2025.

s/ Mustafa T. Kasubhai
MUSTAFA T. KASUBHAI (He / Him)
United States District Judge